FILED

2023 Aug-11  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JOSEPH HOLT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No.: 2:22-cv-1501-AMM** |
| **v.** | ) |
| | ) |
| **ORION REAL ESTATE** | ) |
| **SERVICES., INC.** *d/b/a* **ALLIED** | ) |
| **ORION GROUP, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This case is before the court on a motion to dismiss by Defendant Housing Authority of the Birmingham District ("HABD"), Doc. 7; a motion to strike by HABD, Doc. 20; and a motion for leave to file a brief out of time by Plaintiff Joseph Holt, Doc. 21. For the reasons stated below, HABD's motion to dismiss, Doc. 7, is **GRANTED**. HABD's motion to strike, Doc. 20, is **DENIED**. Mr. Holt's motion for leave to file a brief out of time, Doc. 21, is **GRANTED**.

## I.    BACKGROUND

### A. Factual Allegations

These are the material facts that Mr. Holt alleged in his amended complaint, viewed in the light most favorable to him:

Mr. Holt is an African American man who owns H+H Contracting, a business that performs various building and home repair jobs. Doc. 3 ¶ 7. In 2018, Mr. Holt began contracting with Defendant Orion Real Estate Services, Inc. ("Orion") "to perform various services at Collegeville Center and Roosevelt City Apartments." *Id.* ¶ 9. HABD contracted with Orion "to manage various public housing facilities . . . in Birmingham, including Collegeville Center and Roosevelt City Apartments." *Id.* ¶ 6.

After he contracted with Orion, Mr. Holt began experiencing harassment from various Orion employees. Mario Garcia, a Hispanic man employed by Orion, "told managers at Orion to stop [Mr.] Holt's company from winning bids" and attempted "to lure the Hispanic workers who worked for [Mr.] Holt's company into working for [him] instead." *Id.* ¶¶ 11, 13. Mr. Garcia also told some of Mr. Holt's employees "that they shouldn't be working for a Black person," *id.* ¶ 14,  and started his own company to compete with Mr. Holt's, *id.* ¶ 15. Mr. Garcia also got H+H Contracting placed on vendor suspension. *Id.* ¶ 17.

Mr. Holt also alleges that he experienced harassment from James Goins. Mr. Goins is a white man employed at Orion as a HABD Inspector. *Id.* ¶ 10. Mr. Holt contends that Mr. Goins did not want Mr. Holt "receiving jobs from Orion and would delay payment of invoices because he thought a Black man should not be making as much money as [Mr.] Holt was." *Id.* ¶ 12. Additionally, Mr. Goins called Mr. Holt

2

racial slurs. *Id*. ¶ 25. Mr. Holt reported the racial slurs to Orion's corporate office, but he was told that he would have to deal with the slurs if he wanted to keep working with Orion. *Id*. ¶ 26.

On September 25, 2019, Mr. Holt was disqualified from bidding on jobs offered by Orion. *Id*. ¶ 27. On September 30, 2019, Mr. Goins told Mr. Holt that he would be denying all of Mr. Holt's pending invoices "due to the fact that he was quitting his job with Orion and he was tired of helping Black people make money by checking their invoices." *Id*. ¶ 31. Mr. Holt's invoices were eventually approved after Mr. Goins quit his job and Mr. Holt reported Orion to HABD. *Id*. ¶¶ 31–32.

Mr. Holt contends that, "[a]s a recipient of federal funding, Orion has an obligation to abide by the non-discrimination requirements of [Section] 1981." *Id*. ¶ 41. Mr. Holt further contends that "HABD has an obligation to ensure that the contractors . . . it distributes federal funding to are abiding by the non-discrimination requirements of [Section] 1981", and that it "knew or should have known of the racist treatment to which [he] was subjected." *Id*. ¶¶ 42–44.

Mr. Holt brings four causes of action: a breach of contract claim against Orion individually, *id*. at 9, and three claims under 42 U.S.C. § 1981 ("Section 1981") for racial discrimination, retaliation, and hostile work environment against Orion and HABD. *Id*. at 10–13.

### B. Procedural History

Mr. Holt filed his original complaint against Defendants James Goins, Mario Garcia, Susan Jarvis, David Cortez, Ana Candelario, Layla Stewart, and Orion on November 29, 2022. Doc. 1. On January 17, 2023, he amended his complaint to voluntarily dismiss all defendants other than Orion, and to add HABD as a defendant. Doc. 3. On February 11, 2023, HABD filed a motion to dismiss. Doc. 7. After the court granted a motion to extend Mr. Holt's deadline for filing his response in opposition, Mr. Holt nonetheless filed his response late. Docs. 12, 15.  HABD then filed its reply in support of its motion to dismiss, as well as a motion to strike Mr. Holt's untimely response. Doc. 20. In response, Mr. Holt filed a motion for leave to file a brief out of time. Doc. 21.

## II.   STANDARD OF REVIEW

### A. HABD's Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Rotor Blade, LLC v. Signature Util. Servs.*, LLC, 2021 WL 3930058, at *1 (cleaned up). "A motion to strike is a drastic remedy to be resorted to only when required for the purposes of justice, and

4

one should be granted only when the pleading to be stricken has no possible relation to the controversy." *Id.* (cleaned up). "Courts enjoy broad discretion when rulings on motions to strike." *Id.* (cleaned up).

### B. HABD's Motion to Dismiss

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III.   ANALYSIS

**A. HABD's Motion to Strike & Mr. Holt's Request for Leave to File His Brief Out of Time**

As an initial matter, the court will address HABD's motion to strike, Doc. 20, and Mr. Holt's motion for extension of time, Doc. 21. HABD argues that Mr. Holt's response to its motion to dismiss, Doc. 15, should be stricken because it was filed late. Doc. 20 ¶¶ 6, 10. The initial deadline for Mr. Holt's response to HABD's motion to dismiss was February 27, 2023. Doc. 8. On February 22, 2023, Mr. Holt filed an unopposed motion to extend this deadline by twenty-one days, Doc. 11, which the court granted, Doc. 12. Despite Mr. Holt's new response deadline of March 20, 2023, he did not file his response until 12:01 a.m. on March 21, 2023. Doc. 15. Thus, Mr. Holt's response was untimely by two minutes. HABD argues that "[b]ecause the [r]esponse was untimely even after an extension . . . the [r]esponse should be stricken." Doc. 20 ¶ 10.

Following HABD's motion to strike, Mr. Holt filed a motion for extension of time asking for leave to file his brief late. Doc. 21. Mr. Holt argues that the motion to strike is not a proper method for attacking an untimely response to a motion to dismiss. *Id*. at 1. Mr. Holt also argues that his tardiness was caused by excusable neglect. *Id*. at 2–3.

Ordinarily, the court does not consider untimely arguments. But Mr. Holt's untimely response is neither redundant, immaterial, impertinent, or scandalous. Fed.

R. Civ. P. 12(f). And, in any event, responsive briefs are not a "pleading" under Rule 12(f), so a motion to strike is not the proper method of attacking Mr. Holt's brief. *See* Fed. R. Civ. P. 7(a). Accordingly, the court declines to exercise its discretion to strike Mr. Holt's response to HABD's motion to dismiss. HABD's motion to strike, Doc. 20, is **DENIED**. Mr. Holt's motion for extension of time, Doc. 21, is **GRANTED** and the court will consider his response in opposition to HABD's motion to dismiss.

### B. HABD's Motion to Dismiss

HABD argues that Mr. Holt's claims against it should be dismissed for failure to state a claim for which relief may be granted. Doc. 7 at 1. Mr. Holt's three claims against HABD—racial discrimination, retaliation, and hostile work environment— are all brought pursuant to Section 1981. Doc. 3 at 10–13. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . as is enjoyed by white citizens." Section 1981. The statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §1981(b).

"Any claim brought under [Section] 1981 . . . must initially identify an impaired 'contractional relationship,' [as defined by Section 1981], under which the

plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "Absent the requirement that the plaintiff himself must have rights under the contractual relationship, [Section] 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to **somebody's** contract." *Id.* (emphasis in original).

Courts in this circuit have dismissed Section 1981 discrimination claims where a plaintiff fails to plead any allegations of an impaired contractual relationship. *See, e.g., Mitchell v. Archer Daniel Midland Co.*, No. 2:15-cv-00149, 2015 WL 4231075, at *4–5 (N.D. Ala. July 13, 2015). The Eleventh Circuit affirmed such a dismissal in *Moore v. Grady Memorial Hospital Corporation*, 834 F.3d 1168 (11th Cir. 2016). There, an African American plaintiff entered into an employment contract with Morehouse School of Medicine ("MSM"). *Id.* at 1169. Grady Memorial Hospital ("Grady") later entered into an affiliation agreement with MSM under which MSM faculty provided clinical services to Grady. *Id.* at 1169–70. After the plaintiff alleged that he experienced racial discrimination while working, he sued Grady for, *inter alia*, violations of Section 1981. *Id.* at 1171. The district court granted Grady's motion to dismiss the Section 1981 claims, and the plaintiff appealed. *Id.* at 1171–72. On appeal, the plaintiff argued that two contracts support

8

his Section 1981 claim: his employment agreement with MSM and the affiliation agreement between Grady and MSM. *Id*. at 1172.

The Eleventh Circuit found that the plaintiff's employment agreement with MSM provided a basis for a Section 1981 claim because a plaintiff can bring a Section 1981 claim for interference with contractual rights the plaintiff holds with a third party. *Id*. at 1173–74. The plaintiff argued that Grady's discriminatory actions interfered with his MSM contract by "suspending his privileges, diverting cases to white physicians outside of Grady, and failing to provide operating rooms" for MSM doctors. *Id*. at 1174. Accordingly, the court found that the plaintiff pleaded sufficient factual allegations to support a Section 1981 claim based on the alleged impairment of the plaintiff's contract with MSM. *Id*.

By contrast, the district court found that the affiliation agreement between Grady and MSM did not provide a basis for a Section 1981 claim because the plaintiff was neither a party to nor a third-party beneficiary of the agreement. *Id*. Because the plaintiff could not assert any contractual right in connection with the affiliation agreement between Grady and MSM, the Eleventh Circuit affirmed the dismissal of the Section 1981 claim premised on the affiliation agreement. *Id.* at 1175.

*Moore* is instructive here. Mr. Holt's complaint makes clear that the only relevant contract existed between Mr. Holt and Orion. *See* Doc. 3. There is no

allegation of any direct contractual relationship between Mr. Holt and HABD. *See id*. Indeed, Mr. Holt seems to admit there is no contractual relationship with HABD. *See* Doc. 15. Neither does Mr. Holt allege that HABD interfered with his Orion contract in any way; rather, Mr. Holt rests his entire case against HABD on the allegations that "HABD has an obligation to ensure that the contractors . . . it distributes federal funding to are abiding by the . . . requirements of [Section] 1981," Doc. 3 ¶ 42, and that "HABD failed to have sufficient oversight and supervision processes and policies in place to ensure . . . the contractors chosen were in fact abiding by the [Section] 1981 non-discrimination requirements," *id*. ¶ 43. But these are not the kind of allegations that give rise to a Section 1981 claim.

Because "a plaintiff cannot state a claim under [Section] 1981 unless he has . . . rights under the existing . . . contract that he wishes 'to make and enforce,'" and because "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship," Mr. Holt has failed to state a viable claim against HABD. *Domino's Pizza*, 546 U.S. at 479–80. Nevertheless, Mr. Holt argues that, absent a contractual relationship, HABD can still be found liable for the alleged discriminatory conduct of Orion because a "significant connection" exists between Orion and HABD. Doc. 15 at 1. Mr. Holt asserts that *King v. UA Local. 91* creates a basis for his claim to proceed because of a "significant connection" even in the absence of contractual relationship. *Id*. But *King* does not

10

hold or even suggest that. *King* involved labor unions and held that "International Labor Unions must bear a heavy responsibility in giving effect to the remedial provisions of Title VII. So, an international union may incur liability for discriminatory effects of contractional provisions found in collective bargaining agreements." *King v. UA Loc. 91*, 2022 WL 803379, at \*13 (N.D. Ala. Mar. 15, 2022) (emphasis omitted) (cleaned up). Accordingly, *King* is persuasive precedent for the proposition that international labor unions may be liable for the discriminatory practices of a local union if a "significant connection" exists between the international labor union and the discriminatory practice—a legal principle that is not at issue here. *Compare id.* at \*13, *with* Doc. 15. Mr. Holt provides no authority that supports the idea that a "significant connection" between Orion and HABD could make up for a lack of contractual relationship between Mr. Holt and HABD.

Accordingly, Mr. Holt has failed to state a claim for relief, and his claims against HABD are **DISMISSED**.

## IV.   CONCLUSION

For the foregoing reasons, HABD's motion to dismiss, Doc. 7, is **GRANTED**. HABD's motion to strike, Doc. 20, is **DENIED**. Mr. Holt's motion for leave to file a brief out of time, Doc. 21, is **GRANTED**. This case will proceed solely as to Mr. Holt's claims against Orion.

11

**DONE** and **ORDERED** this 11th day of August, 2023.

_____

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE